IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
Northeastern Division

| | |
|---|---|
| Maria Nolen,<br><br>**Plaintiff.**<br><br>vs.<br><br>The Diocese of Birmingham in Alabama; St. Ann Catholic School; Raymond Remke; Fran Lawlor; Veronique Edington; John Edington; Beverly Crowder; Scott Brown,<br><br>**Defendants** | Civil Action No.<br><br>5:16 CV 238 HGD |

## COMPLAINT AND DEMAND FOR JURY TRIAL

### INTRODUCTION

1. This action arises from the Defendants' violations of the Civil Rights Act of 1866, 42 U.S.C. § 1981 and Alabama common law.

### PARTIES

2. Maria Nolen ("Nolen") was the principal of St. Ann Catholic School in Decatur, Alabama, until December 2014. As the principal, Nolen was an employee, under contract, of the Diocese of Birmingham in Alabama and St. Anne Catholic School. Nolen is a resident of Decatur, Alabama in Morgan County and is over 19 years of age.

3. St. Ann Catholic School ("School") is a parochial school operated by the Diocese. The School is located in Decatur Alabama, in Morgan County.

4. The Diocese of Birmingham in Alabama ("the Diocese") is a religious organization, and part of the Roman Catholic Church, that oversees the operations of the Roman Catholic Church in most of Alabama. The Diocese operates several parochial schools, one of which is the School in this action. The Diocese is located in Jefferson County, Alabama.

5. Raymond Remke (" Remke") was Nolen's direct supervisor and the cleric in charge of St. Ann Catholic School. Remke is a resident of Decatur, Alabama, in Morgan County or Limestone County, and is over 19 years of age.

6. Fran Lawlor (" Lawlor") is the superintendent of the parochial school system under the Diocese of Birmingham. Lawlor is a resident of Jefferson County, Alabama, and is over 19 years of age.

7. Veronique Edington ("V. Edington") was Nolen's secretary and an employee of the School and Diocese. V. Edington is a resident of Decatur, Alabama, in Morgan County or Limestone County, and is over 19 years of age.

8. John Edington (" J. Edington") is a member of the School's advisory board. J. Edington also servers a financial advisor for the Diocese and School, overseeing some scholarship programs and donation campaigns. Further based on information and belief, J. Edington is an important financial benefactor for the School. J. Edington is the spouse of V. Edington. J. Edington is a resident of Decatur, Alabama, in Morgan County or Limestone County and is over 19 years of age.

9. Beverly Crowder (" Weimer") is the former principal of St. Ann Catholic School. Weimer is a resident of Decatur, Alabama, in Morgan County or Limestone County, and is over 19 years of age.

10. Scott Brown ("Brown") is a member of the School's advisory board. Brown is a resident of Decatur, Alabama, in Morgan County or Limestone County, and is over 19 years of age.

## JURISDICTION

11. The Court has jurisdiction to hear all § 1981 claims under 29 U.S.C. §1331 and supplemental jurisdiction over all state law claims under 42 U.S.C. §1367.

## GENERAL ALLEGATIONS

12. Before July 2012, the School suffered serious financial hardship and a significant decrease in enrollment. In July 2012, the School and Diocese hired Nolen to serve as the new, School principal. The School and Diocese entered into an employment contract with Nolen. The term of the contract was one year and was renewed each year until termination. The latest contract is attached as (Exhibit *A).*

13. As principal, Nolen made most employment, financial, and educational decisions for the School.

14. Beginning in July 2012, the School only had 54 families with enrolled students. Because of this poor enrollment, Nolen focused on increasing student enrollment, by organizing outreach programs and School promotions.

Thanks to Nolen's efforts, a total of 90 families had students enrolled with the School by August 2012. As part of her outreach programs, Nolen began marketing the School to the Hispanic community. Because of her efforts, the School had Hispanic students, teachers and board members.

15. Throughout Nolen's tenure, the School's student enrollment continued to rise. As part of her efforts to increase enrollment, in the 2013-2014 school year, Nolen organized the School's receipt of scholarship funds from several Student Scholarship Organizations ("SGOs"). These funds were used to give need-based scholarships to under-privileged students. From these scholarships, the School would ultimately receive over $176,000 USD in additional tuition payments.

16. Many of the applicants for "SGO" funds had Hispanic national origins.

17. As the program grew, Nolen hired V. Edington as her secretary. V. Edington assisted Nolen in organizing SGO scholarship-application-assistance sessions.

18. During the time of her employment, V. Edington made many derogatory comments towards the Hispanic students, families, and scholarship applicants. On one such occasion occurred at an SGO scholarship-application session. At the beginning of the session, V. Edington placed a sign on school doors, giving direction on how the doors were to be opened. After placing the sign, Edington remarked, " if they could speak English and read it, this would help."

19. As the year progressed, Nolen asked for V. Edington's assistance in other programs that would involve Hispanic families and students. Each time, V. Edington would refuse.

20. In another instance, Nolen asked V. Edington to help organize a scholarship-application-assistance session. This session would mostly be attended by Hispanic applicants. V. Edington refused. Later that day, Nolen overheard V. Edington tell another employee, " can you believe how stupid Ms. Nolen is to think that I am going to give up my Saturday to help these people." Following this incident, Nolen reported V. Edington to Lawler and Remke.

21. After the incident, the Director of the Diocese Human Resources called Nolen, settings up a meeting to discuss V. Edington. At the meeting, the Director asked Nolen to stop reprimanding V. Edington for her behavior. Nolen refused.

22. On or about October 24, 2014, Nolen again reprimanded V. Edington. Afterwards, Nolen, Fran Lawler, and V. Edington discussed the incident. As the discussion concluded, V. Edington resigned.

23. At the end of November 2014, Nolen gave a presentation about School finances to the advisory board. At the meeting, Brown and J. Edington

continually criticized Nolen's leadership. Brown concluded the criticism by commenting that the School would not be receiving so much money if it were not accepting under-qualified, Hispanic applicants. Nolen responded by stating that all SGO applicants had to pass an entrance exam and the Hispanic applicants all passed.

24. On December 10, 2014, Remke wrote a letter (" Accusation Letter") to Nolen. In the letter, Remke accused Nolen of embezzlement and demanded her immediate resignation.

25. On December 12, 2014, Remke called Nolen to his office for a meeting. At the meeting, Remke read the Accusation Letter aloud, then told Nolen to sign a letter of resignation. During this process, Nolen was given no opportunity to respond to the accusations.

26. Nolen has never stolen school funds. In fact, Nolen has only used School funds to purchased supplies for the School. And, Nolen has kept accurate records of all purchases.

27. Because of her termination, Nolen lost her livelihood.

28. Because of her termination, Nolen lost her retirement benefits.

29. Because of her termination, Nolen lost health insurance.

30. Because of her termination, Nolen lost the ability to pay her home-mortgage-loan. The bank has commenced foreclosure proceedings against Nolen.

31. In the beginning of 2015, Nolen visited her grandson who was a student at the school. Upon arriving, Nolen was told that if she entered School property again, then she would be arrested.

32. Upon information and belief, the School's administration, especially Remke and Crowder, has informed the parents of Nolen's former students and prospective employer's that Nolen is a thief.

33. After her termination, Nolen has applied for administrative positions at other schools, including several Catholic schools, but all of her applications have been rejected.

34. Because of the above-listed wrongs, Nolen has suffered from severe stress. This has resulted in significant weight loss, on information and belief has exacerbated severe medical conditions, which were previously under control, and has caused sleep deprivation.

35. Because of the above-listed wrongs, Nolen has suffered a loss of reputation, professional standings and credit.

## COUNT I:
## § 1981 Retaliation
### (Nolen vs. School; Diocese; Lawler; Remke; Brown; V. Edington; J.Edington)

36. Plaintiff Maria Nolen re-alleges paragraphs 13-32.

37. Plaintiff opposed the Dioceses and School's discrimination against students with Hispanic/ Latin American national origins, in contract formation and execution.

38. The above discrimination violates (or Plaintiff reasonably believed that the discrimination violates) 42 U.S.C. § 1981.

39. Based on information and belief, Defendants Brown, V.Edignton, and/or J. Edington used their positions on the School's advisory board and financial clout, as benefactors, to induce the Diocese and School to terminate Nolen's employment in retaliation for Plaintiff's opposition to discrimination in contract formation.

40. Based on Information and Belief, Defendants Lawler and Remke, each acting within the scope of their employment, on behalf of the School and Diocese, terminated Plaintiff Maria Nolen's employment in retaliation for Plaintiff's opposition to discrimination in contract formation.

41. Based on Information and Belief, the School and Diocese terminated Plaintiff Maria Nolen's employment in retaliation Plaintiff's opposition to discrimination in contract formation.

42. Defendants intentionally disregarded Plaintiff's rights under 42 U.S.C. § 1981.

43. The Defendants' retaliation actually and proximately caused the Plaintiff to suffer lost past and future earnings, mental and emotional distress, sickness, loss of professional standing, loss of enjoyment of life, injury to reputation and other damages.

44. Therefore, the Plaintiff Maria Nolen demands back pay, front pay, compensatory damages, prejudgment interest, cost, attorney's fees and punitive damages.

## COUNT II
## Breach of Contract
### (Nolen v. School and Diocese)

45. Plaintiff re-alleges paragraphs 8-32.

46. Plaintiff Nolen entered into an employment contract with the Defendant School and the Defendant Diocese (See Exhibit A). The contract provides for

a total compensation of $61,058 USD due to Plaintiff Nolen, payable over 26 periods.

47. The contract contained a definite term of employment: June 11, 2014, through June 17, 2015.

48. Under the contract provision (6), the Plaintiff could only be terminated for cause.

49. Upon information and belief the Diocese and School contract signatories, Remke and Lawlor, have authority to bind the School and Diocese to an employment contract.

50. The contract is supported by substantial consideration, recited in contract provision (8).

51. The contract provision (3) states that the Defendants "agree to treat [Plaintiff Nolen] as a professional person of integrity and respect."

52. The Defendant breached provision (3) by wrongfully accusing Plaintiff Nolen of theft and terminating her employment on December 12, 2014.

53. The Plaintiff performed her obligations under the contract.

54. As the actual and proximate result of this breach, Nolen suffered lost wages and other employment benefits.

55. Therefore, Plaintiff Nolen demands that the Defendants pay compensatory damages and any other relief required to do substantial justice.

## COUNT III
## Defamation *per se*
### (Nolen vs. Crowder; Remke; School; Diocese)

56. Plaintiff re-alleges paragraphs 8-32.

57. Defendants Crowder and Remke, each acting within the scope of employment, published defamatory statements, concerning Plaintiff Nolen, to the public.

58. Defendants, through their statements, wrongfully attributed criminally punishable conduct to Plaintiff Nolen. Defendants' statements constitute defamation *per se*.

59. Remke acted with actual knowledge of the statements falsity and malice.

60. Crowder acted with gross or reckless disregard for the statements falsity.

61. As the actual and proximate result of the Defendant's defamation, Plaintiff suffered mental and emotional distress, sickness, loss of professional standing, loss of enjoyment of life and injury to reputations and other damages.

62. The Defendants defamed Plaintiff Nolen with malicious intent.

63. Therefore, Plaintiff Nolen demands a public retraction, compensatory damages, punitive damages and any other relief required to do substantial justice.

## COUNT IV
## Intentional Interference with a Contract
## (Nolen v. V.Edington; J.Edington; S. Brown)

64. Plaintiff re-alleges paragraphs 8-32.

65. Defendants used their positions on School's advisoly board and financial clout, as benefactors, to maliciously and intentionally interfere with Nolen 's employment contract.

66. Defendants knew of the employment contract between Nolen, the School, and the Diocese.

67. Defendants caused Plaintiff to lose all benefits derived from the contract.

68. Therefore, Plaintiff Nolen demands compensatoly damages, punitive damages and any other relief required to do substantial justice.

## DEMAND FOR JURY TRIAL

69. Plaintiff demands a trial by jury on all counts of this complaint.

Respectfully submitted,

*s/ Stanton H. McDonald*
Attorney for the Plaintiff
(ASB-8070-L60S)
Stan McDonald, Attorney at Law
807 Shoney Drive S.W., Suite C,
Huntsville, AL 35801
(256) 882-5673
stan@jacobtitle.com

7